UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-cv-80848-Cannon/McCabe

STEPHEN ARPAIA, individually and
on behalf of all others similarly situated,

    Plaintiffs,
v.

CAPITAL ONE, N.A., a foreign
corporation,

    Defendant.
_____/

**REPORT & RECOMMENDATION**

THIS CAUSE comes before the Court on Defendant's Motion to Dismiss ("Motion"), which was referred to the undersigned by United States District Judge Aileen M. Cannon. (DE 5, DE 14). For the reasons set forth below, the undersigned **RECOMMENDS** that the Motion be **GRANTED**.

**I.     BACKGROUND**

This is a putative class action involving credit card fees. The Court accepts the following facts as true, taken from Plaintiffs' Complaint. (DE 1-2). Plaintiff is a Florida resident with two Capital One Platinum Credit Cards issued by Defendant. (DE 1-2 ¶¶ 1-2). Both credit card relationships are governed by the following nearly identical documents: (1) a Truth in Lending Act disclosure letter ("TILA Disclosure"), and (2) a Capital One Customer Agreement ("Customer Agreement"). (DE 1-2 at 21-38).

Both TILA Disclosures provide that Defendant will charge an annual percentage rate of 20.24% interest for "Purchases." (DE 1-2 at 21, 30). Both TILA Disclosures likewise provide

that Defendant will charge an "Annual Fee" of $39. (DE 1-2 at 22, 31). Both Customer Agreements contain the following identical language:

> We will charge *Interest Charges* and *Fees* to your *Account* as disclosed in your *Statement* and other *Truth-in-Lending Disclosures*. …
>
> …
>
> We will generally treat *Fees* as purchase transactions unless otherwise specified below. …

(DE 1-2 at 26, 35). As to the "otherwise specified" language, both Customer Agreements identify a single instance where Fees will not be treated as purchase transactions, i.e., the "Cash Advance Fee" which will instead be treated as a "Cash Advance transaction," subject to a higher interest rate than purchase transactions. (DE 1-2 at 26, 35).

Plaintiff alleges he has not made a single purchase on either of his credit cards over the past five years. (DE 1-2 ¶ 51). Despite this, Defendant has continued to charge Annual Fees on both credit cards as well as interest on those Annual Fees. (DE 1-2 ¶¶ 35, 51, 64). Plaintiff alleges that Defendant had no contractual right to charge interest on these Annual Fees. (DE 1-2 ¶ 34).

In addition, Plaintiff alleges that Defendant widely advertises on its website and elsewhere that its Capital One Platinum Credit Cards have "No Annual Fee." (DE 1-2 ¶¶ 25-26, 43). Plaintiff alleges both of his credit cards were subject to certain renewal provisions every two to four years. (DE 1-2 ¶¶ 42, 75). He further alleges that Defendant committed misconduct by automatically renewing his credit cards with the $39 Annual Fee without giving him the benefit of the widely advertised promotion for "No Annual Fee." (DE 1-2 ¶¶ 44, 76-80).

Based on the above conduct, Plaintiff alleges two counts as follows:

Count I         Breach of Contract
                (Charging Interest on Annual Fees)

        Count II        Breach of Implied Covenant of Good Faith and Fair Dealing
                        (Charging Annual Fees on Renewals)

Plaintiffs seek to represent a class comprised of all persons or entities located in the United States who paid interest on any annual or monthly fee on a Capital One Platinum Credit Card at any time from June 10, 2019, up to the date the Court certifies a class. (DE 1-2 ¶¶ 1, 28).

## II. STANDARD

By way of this Motion, Defendant seeks dismissal of both counts of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept a plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," a mere "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III. DISCUSSION

The Court will address each count in turn.

### A. Count I – Breach of Contract

Count I alleges a claim for breach of contract based on Defendant's conduct of treating Annual Fees as "purchase transactions" and thereafter charging interest on those fees. (DE 1-2 ¶¶

3

55-70). To state a claim for breach of contract under Virginia law,[1] a plaintiff must allege facts that show (1) a legally enforceable obligation of a defendant to a plaintiff, (2) the defendant's violation or breach of that obligation, and (3) injury or damage to the plaintiff caused by the breach of obligation. *Ramos v. Wells Fargo Bank, NA*, 770 S.E.2d 491, 493 (Va. 2015).

The Court finds that Count I fails to state a claim as a matter of law. The Customer Agreements provide as follows:

> We will charge *Interest Charges* and *Fees* to your *Account* as disclosed in your *Statement* and other *Truth-in-Lending Disclosures*. …

(DE 1-2 at 26, 35). The TILA Disclosures, in turn, allow Defendant to charge an Annual Fee of $39 and interest at the rate of 20.24%. (DE 1-2 at 21, 30). As to interest on fees, the Customer Agreements expressly provide as follows:

> We will generally treat Fees as purchase transactions unless otherwise specified below. …

(DE 1-2 at 26, 35). As to the "otherwise specified" language, the Customer Agreements thereafter identify a single instance where fees will not be treated as purchase transactions, i.e., the "Cash Advance Fee" which will instead be treated as a "Cash Advance transaction," subject to a higher interest rate. (DE 1-2 at 26, 35).

In short, the Customer Agreements allow Fees, other than Cash Advance Fees, to be treated as purchase transactions which will be subject to interest like any other purchase transactions. The plain language of Customer Agreements allows Defendant to do the very thing the Complaint alleges it cannot do, i.e., charge interest on Annual Fees. Plaintiff cannot state a claim for breach of contract where the contract itself allows the conduct at issue.

---

[1] Both sides agree that Virginia law applies to this dispute based on paragraph 37 of the Customer Agreement. (DE 5 at 4, DE 12 at 3-4).

The Court has considered, but finds unpersuasive, Plaintiff's argument that the phrase "generally treat," somehow restricts Defendant's contractual right to charge interest on Annual Fees. (DE 12 at 9-10). In the Court's view, this phrase must be read in conjunction with the language "unless otherwise specified below" and the additional language that describes how the "Cash Advance Fee" will be treated as a "Cash Advance transaction," not a purchase transaction. Viewing the contract as a whole, the phrase "generally treat" does not restrict Defendant's contractual right to treat Annual Fees as purchase transactions; the phrase merely prefaces the exception that follows it, i.e., the exception for Cash Advance transactions.

The Court recognizes that the Complaint alleges that the Customer Agreement "does not allow [Defendant] to charge interest on Annual Fees." (DE 1-2 ¶ 34). In most situations, courts must accept a plaintiff's allegations as true at the motion-to-dismiss stage. This rule does not hold true, however, when the exhibits attached to the Complaint contradict those very same allegations. *See Griffin Indus. Inc. v. Irvin*, 496 F.3d 1189, 1206-07 (11th Cir. 2007) ("Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."). Such is the case here, where the Customer Agreement contradicts the allegations of paragraph 34 of the Complaint. The Motion should be granted as to Count I.

### B.   Count II – Breach of Implied Covenant of Good Faith and Fair Dealing

Count II alleges a claim for breach of the implied covenant of good faith and fair dealing based on Defendant's conduct of automatically renewing Plaintiff's credit cards with a $39 Annual Fee without giving him the benefit of the widely advertised promotion for "No Annual Fee." (DE 1-2 ¶¶ 44, 76-80). In Virginia, every contract contains an implied covenant of good faith and fair dealing. *Va. Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535, 541–42 (4th Cir. 1998). The covenant comes into play when the express terms of the contract give one of the parties the power

to make a discretionary decision. *Id.* In such situations, the implied covenant prohibits a party from exercising its contractual discretion in "bad faith." *Id.* at 542. The implied covenant does not "prevent a party from exercising its explicit contractual rights." *Id.* Likewise, the doctrine "cannot be used to override or modify explicit contractual terms." *Riggs Nat'l Bank v. Linch*, 36 F.3d 370, 373 (4th Cir. 1994). Instead, the implied covenant serves merely to prohibit parties vested with discretionary power from exercising that power arbitrarily, unfairly, or dishonestly. *Stoney Glen, LLC v. S. Bank & Trust Co.*, 944 F. Supp. 2d 460, 466 (E.D. Va. 2013).

Of significance here, the implied covenant of good faith and fair dealing does not exist as a stand-alone or independent term of the contract. *See Charles E. Brauer Co., Inc. v. NationsBank of Va., N.A.*, 251 Va. 28, 33, 466 S.E.2d 382 (1996) ("[T]he failure to act in good faith ... does not amount to an independent tort"). Rather, the implied covenant must be tied to an express contractual term that vests discretion in one of the parties. *See Vermiculite*, 156 F.3d at 542 (recognizing a valid cause action for breach of implied covenant where the contract gave one of the parties "sole discretion" over whether to mine certain real property).

In this case, Plaintiff alleges that Defendant breached the implied covenant of good faith and fair dealing by automatically renewing his credit card contracts and continuing to charge him a $39 Annual Fee without giving him the benefit of a widely advertised promotional campaign for "No Annual Fee." (DE 1-2 ¶¶ 44, 76-80). Plaintiff vaguely alleges that both of his credit cards were subject to certain renewal provisions every two to four years. (DE 1-2 ¶¶ 42, 75). Plaintiff fails, however, to point to any provision of the TILA Disclosures or the Customer Agreements that applies to renewals or grants discretionary power over renewals. The Court has reviewed these documents at length and has located no such provisions. Given that Plaintiff cannot tie his claim

for breach of the implied covenant to a specific term of the contract that vests discretionary power with Defendant, Count II must be dismissed.

### C. Time Bar

Finally, Defendant argues that Plaintiff's claims fail due to a time bar imposed by operation of the Customer Agreement and certain documents attached to the monthly statements mailed to him. (DE 5 at 12). Specifically, the Customer Agreements provide as follows:

> **Disputed Transactions**
>
> You must inspect each *Statement* you receive. Tell us about any errors or questions you have as described in the "Billing Rights Summary" on your *Statement* and other *Truth-in-Lending Disclosures*. If you do not notify us of an error, we will assume that all information on the *Statement* is correct.

(DE 1-2 at 25, 34). Defendant has attached an exemplar monthly statement as Exhibit 1 to the response to this Motion. (DE 5-1). The Billing Rights Summary appears on the reverse side of the monthly statement and provides as follows:

> **What to do if you find a mistake on your statement:** If you think there is an error on your statement write to us at:
> PO Box 30285, Salt Lake City, UT 84130-0285
>
> …
>
> You must contact us within sixty days after the error appears on your statement. You must notify us of any potential errors in writing. …

(DE 5-1 at 2). Defendant argues that the Complaint must be dismissed in its entirety because Plaintiff failed to contact Defendant within 60 days as required by the Billing Rights Summary.

The Court finds this argument unpersuasive for two reasons. First, the Billing Rights Summary does not appear within the four corners of the Complaint. This argument necessarily requires the Court to look outside four corners of the Complaint, which the Court cannot do at the motion-to-dismiss stage.

7

Next, even if the Court could look to materials outside the pleadings, the Court questions whether the issues at stake in this lawsuit qualify as billing "mistakes" or "errors" within the meaning of the Billing Rights Summary. This lawsuit involves issues of contract interpretation governing the relationship between Defendant and its customers. It does not involve Plaintiff's failure to notice, within 60 days, that that his local coffee shop over-charged him for coffee during the last billing cycle. The Court need not, and does not, decide this issue at this stage of the proceedings.

### IV.    RECOMMENDATION & NOTICE OF RIGHT TO OBJECT

For the reasons stated above, the undersigned **RECOMMENDS** that the Motion (DE 5) be **GRANTED**. Because Plaintiff may be able to cure these pleading deficiencies, the undersigned **RECOMMENDS** that Plaintiff's Complaint be **DISMISSED WITHOUT PREJUDICE** with leave to file an Amended Complaint. **Pending the District Judge's resolution of this Report and Recommendation, Plaintiff may only file an Amended Complaint in full compliance with Fed. R. Civ. P. 15.**

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Aileen M. Cannon. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

**IF A PARTY DOES NOT INTEND TO OBJECT TO THIS REPORT AND RECOMMENDATION, THE PARTY SHALL FILE A NOTICE TO THAT EFFECT WITHIN FIVE (5) DAYS.**

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 30th day of September 2024.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE